```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
_____
                                    :
MARK C. HOTTON                      :
                                    :
          Petitioner,               :   Civ. No. 17-7742 (NLH)
                                    :
     v.                             :
                                    :
DAVID ORTIZ, Warden,                :   OPINION
                                    :
          Respondent.               :
_____ :
```

**APPEARANCES**:

Mark C. Hotton
81697-053
Fort Dix/Federal Correctional Institution
Inmate Mail/Parcels
East:  PO Box 2000
Fort Dix, NJ 08640

    Petitioner Pro Se

Anne B. Taylor
Office of the U.S. Attorney
District of New Jersey
401 Market St., 4th Floor
PO Box 2098
Camden, NJ 08101

    Attorney for Respondent

**HILLMAN, District Judge**

    I.    INTRODUCTION

    Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241.  Petitioner challenges the loss of good time credits arising from a prison disciplinary hearing while he was

incarcerated at the camp at U.S.P. Lewisburg. For the following reasons, the habeas petition will be denied.

## II. BACKGROUND

According to a prison disciplinary report, Petitioner was spotted on August 25, 2016 coming out of the commissary door on the outside warehouse with two duffel bags. He attempted to store them above the wheels of a storage trailer parked in front of the warehouse. See ECF No. 1-1 at 2. Upon inspection, the duffel bags were found to contain food service items. See id. Upon returning the bags to the warehouse, the warehouse officer stated that the food items had been removed from the commissary without permission and were stolen. See id. Petitioner was charged with possession of stolen property. The matter was referred to a Disciplinary Hearing Officer ("DHO") by the Unit Disciplinary Committee ("UDC"). See ECF 3-2 at 21.

At the time of Petitioner's initial hearing before the UDC, Petitioner was placed in the Special Housing Unit ("SHU") at Low Security Correctional Institution ("LSCI") Allenwood, several miles away from the camp at Lewisburg due to the severity of his charge and because the camp at Lewisburg does not have a SHU. See Decl. Chambers, ECF No. 3-3 at 1-2. Petitioner requested four witnesses at his hearing before the DHO, namely: (1) B. Lukenbill – warehouse foreman; (2) D. Sprenkle – "FSWH" foreman; (3) inmate Sturman; and (4) inmate Sykes. See ECF No. 3-2 at

2

26.  Petitioner stated Lukenbill and Sprenkle would testify that the food items were given to him by staff and Sturman and Sykes would testify that the staff gave him the food.  See id.

A DHO conducted a hearing on September 7, 2016 at Allenwood.  The DHO's report indicated Petitioner waived his right to have a staff representative present at the hearing.  See ECF No. 3-2 at 31.  The DHO report further noted Petitioner did not contest the accuracy of the incident report with the exception that the food items were not stolen, but were given to him by warehouse foreman Sprenkle.  See id.  Petitioner further stated the following at the hearing on his behalf:

> I worked in the warehouse for about a year. I was always given food by the warehouse foreman.  I told them that I wanted to change my job to UNICOR at Allenwood.  Mr. Luckenbill (another warehouse worker foreman) told me if I stay in the warehouse, and wouldn't change jobs, they would continue to provide me with vegetables so I could make salads and eat healthy.  I was taking the vegetables back to the housing unit so I could make salads for myself.  I was going to give the other food to other inmates to cook soup for me.  They (staff) knew I was taking all this stuff back to the housing unit.  Staff drive us to and from work everyday.

See id.

While the DHO's report indicated that Petitioner did in fact request witnesses Lukenbill, Sprenkle, Sturman, and Sykes, the report also noted that they were not called to present in-

3

person testimony because the hearing was conducted at Allenwood, while the staff and the inmates were several miles away at FPC Lewisburg. See id. Nevertheless, statements were obtained from each of these four witnesses and were considered as evidence. See id. The statements admitted into evidence from these four witnesses were as follows:

1. Luckenbill – "He (Hotton) was given a warning the last time he tried to take stuff from the warehouse. He was also told that if it happened again he would be removed from the (work) detail."

2. Sprenkle – "He (Hotton) would ask for some stuff to cook with at the warehouse, and I would give him the stuff he needed. But I told him that nothing was to be taken back to the housing unit."

3. Sturman – "[H]e (Hotton) would always come to me to give him stuff all the time, and I told him "no." I had to go to my boss and have him to lock everything up."

4. Sykes – "I had nothing to do with what was going on at the warehouse."

See id. at 32.

Ultimately, the DHO determined that Petitioner committed the act of possession of stolen property. See id. The DHO gave greater weight to the eyewitness account of the reporting officer, the photographs of the items, Petitioner's statement

4

that he was only contesting that the items were stolen as well as the statements given from the four witnesses Petitioner wanted to testify on his behalf. See id. at 32-34. Petitioner lost twenty-seven days of good time credits as part of his sanctions for this offense. See id. at 34.

Petitioner appealed the DHO's decision to the Regional Director. See ECF No. 3-2 at 8. In that appeal, Petitioner argued, in addition to the four witnesses previously discussed that he wanted to testify on his behalf, that he wanted inmate Rob Arkellian to testify at the hearing. See id. Petitioner stated that Arkellian was a co-worker of his in the warehouse and would have testified that: (1) the food items were given to Petitioner; and (2) that leftovers were permitted once a week. See id. at 9. Petitioner also argued he was not permitted to ask the questions he wanted of the witnesses he sought to testify on his behalf. See id. at 8. He further asserted on appeal he had sought a staff representative at his hearing. See id. The Regional Director denied the appeal on November 18, 2006. See id. at 11-12.

Petitioner appealed Regional Director's denial to the Central Office. See id. at 14. In his appeal to the Central Office, it appears that Petitioner included a statement from Arkellian that had been provided to Petitioner's wife. In that statement, dated December 12, 2006, Arkellian stated as follows:

5

> I was a direct co-worker of Mark Hotton. . . during the reported incident. [¶] Officer Sprenkle gave Mark Hotton daily all requested food items of cabbage, vegetables, chicken, cottage cheese, eggs, tuna fish, cereal, etc. for our daily consumption for breakfast, lunch and leftovers for dinner. None of the items in Mark Hotton's possession were stolen. All the items were given to him sometime during the prior few days. We were not permitted to bring the items back to the units but we did bring the leftovers back to our housing unit on the weekend.
>
> Every Thursday and Friday the bags, filled with leftovers, were left by the trailer tires and loaded into the supervisors van before we were shuttled back to our housing unit.
>
> I would have freely given this information but during the investigation I was never requested by the investigating officer, Mr. Metzger, to give a statement as he did from Officers Lukanbill, Sprenkle, and inmates Jeff Sykes and Robert Sturman.

ECF No. 3-2 at 18. The Central Office denied Petitioner's appeal on June 16, 2017. See id. at 19.

This Court received Petitioner's federal habeas petition in October, 2017. See ECF No. 1. This Court construes the habeas petition as raising three claims; namely:

1. The DHO's decision lacked "some evidence" ("Claim I").

2. Petitioner was not permitted to have a staff representative at his disciplinary hearing ("Claim II").

3. Petitioner was not permitted to present witnesses at his disciplinary hearing ("Claim III).

6

Within Claim III, Petitioner also alludes to the fact that he was impermissibly transferred to Allenwood prior to his disciplinary hearing which was the cause of why he could not call the witnesses he wanted because they were at Lewisburg.

Respondent filed a response in opposition to Petitioner's habeas petition. See ECF No. 3. In response, Respondent argues that Petitioner's disciplinary proceeding comported with due process and that the DHO's finding was supported by "some evidence."

Petitioner filed a reply and supplement in support of his habeas petition. See ECF Nos. 4 & 5. The matter is now ready for adjudication.

### III. DISCUSSION

Prisoners are guaranteed certain due process protections when a prison disciplinary proceeding may result in the loss of good time credits. See Wolff v. McDonnell, 418 U.S. 539, 564-65 (1974). Challenges "to a disciplinary action that resulted in the loss of good-time credits, is properly brought pursuant to § 2241, as the action could affect the duration of a prisoner's sentence." See Queen v. Miner, 530 F.3d 253, 254 n.2 (3d Cir. 2008) (citing Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001); McIntosh v. U.S. Parole Comm'n, 115 F.3d 809, 812 (10th Cir. 1997); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 758-

7

59 (3d Cir. 1996)).  The due process protections afforded an inmate must include: (1) written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in his defense; (3) an opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied on and the reasons for the disciplinary action; and (5) appearing before an impartial decision making body.  See Crosby v. Piazza, 465 F. App'x 168, 171-72 (3d Cir. 2012) (citing Wolff, 418 U.S. at 563-71).  Additionally:

> "[R]evocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985) (internal quotation marks and citation omitted).  This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or a weighing of the evidence.  See Thompson v. Owens, 889 F.2d 500, 502 (3d Cir. 1989).  Rather, the relevant inquiry asks whether "there is any evidence in the record that could support the conclusion reached by the disciplinary board."  Hill, 472 U.S. at 455-56.

Lang v. Sauers, 529 F. App'x 121, 123 (3d Cir. 2013).

A. Claim I

Petitioner first challenges the DHO's finding because it purportedly lacked "some evidence."  As indicated above, the "some evidence" standard is minimal and does not require

8

independently assessing the credibility of witnesses or a weighing of the evidence. In this case, given the incident report, the officer's statements that Petitioner was not permitted to take items back to the housing unit, as well as the statements of the witnesses admitted into evidence, Petitioner fails to show that his due process rights were violated because the DHO's findings lacked "some evidence."

Petitioner attempts to rely on Jones v. Ortiz, No. 17-2639, 2019 WL 397976, (D.N.J. Jan. 31, 2019) to support his claim that the DHO lacked "some evidence" to find him guilty of possession of stolen property. First, although it could have persuasive weight, Jones is not precedent binding on this Court. Second, Jones is easily distinguishable. In Jones, the late Judge Simandle found that the DHO's conclusion on the charge of "stealing" against a petitioner lacked "some evidence." See id. at *5-6. Judge Simandle found as follows:

> There are some facts regarding the alleged theft that are not in dispute. Petitioner had a peach, a banana, and two pieces of bread. He attempted to leave the dining hall, at which time Officer Sheets informed him that no "food service items" could be taken out of the hall. Officer Sheets then gave Petitioner the choice to either eat the food or dispose of it. Petitioner indicated in some manner that he believed that he was entitled to take one piece of fruit from the dining hall. Shortly thereafter, Officer Sheets issued the charges against Petitioner.

9

All the evidence in the record before the Court indicates the food was given to Petitioner as part of his meal.  There is no evidence suggesting that Petitioner surreptitiously took food that had not been distributed to him from the kitchen or retrieved discarded items from the trash.  The DHO's position at the hearing was that all food belongs to the United States and it is stealing to take it out of the dining hall without express permission.  Prohibited act 219 in its entirety forbids "Stealing; theft (including data obtained through the unauthorized use of a communications device, or through unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored)."  28 C.F.R. § 541.3 (Table 1).  The regulation does not further define stealing, but Black's Law Dictionary indicates that to steal is "[t]o take (personal property) illegally with the intent to keep it unlawfully" or is "[t]o take (something) by larceny, embezzlement, or false pretenses."  STEAL, Black's Law Dictionary (10th ed. 2014).  See Lerman v. Fed. Bureau of Prisons, No. 1:01-CV-232-C, 2003 WL 22121092, at *4 (N.D. Tex. Sept. 12, 2003) (relying on dictionary definition of "insolence" in absence of specific definition in BOP regulation).  Because the BOP's interpretation of the regulation is inconsistent with the ordinary definition of "stealing," the Court will not defer to it.  See Chong v. Dist. Dir., Immigration & Naturalization Serv., 264 F.3d 378, 389 (3d Cir. 2001) ("An agency's interpretation of its own regulation is controlling ... unless it is plainly erroneous or inconsistent with the regulation.").

The fact that one of the choices offered to Petitioner by Officer Sheets when Petitioner attempted to leave Food Services was to eat the food items further indicates that Petitioner had permission to possess the food items.  Further, food items (bananas)

10

>       confiscated from inmates leaving the dining
>       hall were placed in the trash, not returned
>       to the general food supply.  The
>       arbitrariness of the BOP's position is clear
>       when one considers the fact that had
>       Petitioner eaten the food and then left the
>       dining hall with the food in his stomach
>       rather than his hands or pockets, the BOP
>       would not be arguing Petitioner stole the
>       food.  Petitioner may have disobeyed an
>       order to discard or eat the food, but he did
>       not "steal" the food as that word is
>       traditionally understood.  Again, there is
>       no evidence in the record before the Court
>       that indicates the food Petitioner attempted
>       to remove from the dining hall had been
>       discarded, taken from another inmate, or was
>       leftover food not intended for consumption;
>       all of it was purposely given to Petitioner
>       by the BOP for his personal use.

Jones, 2019 WL 397976, at *5-6.

The facts of Jones are distinguishable from what the DHO had before him in Petitioner's case.  Most notably, Petitioner does not dispute that he had the food items outside of the warehouse.  Furthermore, the warehouse officer in the incident report indicated that the items *had been removed* from the warehouse without permission.  See ECF 3-2 at 21.  Furthermore, the statements from Luckenbill, Sprenkle and Sturman indicated that Petitioner was aware he was not permitted to take food items from the warehouse.  This is unlike the petitioner in Jones where Judge Simandle noted the evidence only indicated that the food was purposefully given to the petitioner as part of his personal meal and therefore, by common sense, not stolen.

11

Accordingly, Jones is distinguishable and the DHO's finding met the minimal standard of "some evidence."  Claim I is denied.

   B. Claim II

Petitioner next alleges that his due process rights were violated when he was prevented from having a staff representative present at his hearing.  Indeed, Petitioner states that he requested staff representation from C.O. Webb, but the investigative officer lied and stated Petitioner had actually refused staff representation.  See ECF No. 4 at 6.

   As this Court has noted:

> [t]he Third Circuit has held that "[i]nmates do not have a constitutional right to appointed counsel in prison disciplinary hearings." Macia v. Williamson, 219 Fed. Appx. 229, 233 (3d Cir. 2007) (citing Wolff, 418 U.S. at 570).  "Instead, due process requires that inmates be provided with the aid of a staff representative only where the inmate is illiterate or 'the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case.'" Bermudez v. Holt, No. 1:09-CV-0741, 2010 WL 55713, at *5 (M.D. Pa. Jan. 4, 2010) (citing Wolff, 418 U.S. at 570).

Bouttry v. Hollingsworth, No. 15-4421 (NLH), 2016 WL 4472956, at *4 (D.N.J. Aug. 24, 2016).  The record demonstrates Petitioner is not illiterate.  Furthermore, the issue of whether the items found in Petitioner's possession were stolen was not overly

12

complex. Accordingly, Petitioner fails to show that he is entitled to federal habeas relief on Claim II.

   C. Claim III

In Claim III, Petitioner asserts his due process rights were violated when he was not permitted to present the witnesses he wanted to testify on his behalf at his hearing. Somewhat relatedly, Petitioner also complains about his transfer to Allenwood from Lewisburg which caused the witnesses he wanted to call to become unavailable.

   i. *Presenting Witnesses*

As previously noted, due process protections afforded an inmate during prison disciplinary proceedings where good time credits are disallowed include the opportunity to present witnesses. See Crosby, 465 F. App'x at 172 (citing Wolff, 418 at 563-71). Nevertheless, where a petitioner is prevented from presenting witnesses he seeks at this disciplinary hearing, he still needs to show prejudice to be entitled to relief. See, e.g., Griffin v. Ebbert, 640 F. App'x 181, 184 (3d Cir. 2016) (absent showing of prejudice, petitioner was not denied due process he was due during disciplinary hearing proceedings); Pachtinger v. Grondolsky, 340 F. App'x 774, 776-77 (3d Cir. 2009) (Petitioner's due process rights were not affected by absence of cellmate's testimony where petitioner was not prejudiced by its absence at disciplinary hearing); see also

13

Grossman v. Bruce, 447 F.3d 801, 805 (10th Cir. 2006) (applying harmless error review to claim by prisoner that his due process rights were violated when prison officials denied witness testimony); Banuelos v. McFarland, 41 F.3d 232, 234-35 (5th Cir. 1995) ("Even if the hearing officer erred in not calling witnesses, it appears that there was no prejudice to Banuelos' rights because the testimony of the other inmates would not have changed the result of the proceeding."); Colantano v. Hockeborn, 801 F. Supp. 2d 110, 114 (W.D.N.Y. 2011) ("[T]o establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing.") (citing Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991); Clark v. Dannheim, 590 F. Supp. 2d 426, 429-31 (W.D.N.Y. 2008)).

    Assuming arguendo that it was error to allow Petitioner to call as witnesses Luckenbill, Sprenkle, Sturman and Sykes, Petitioner fails to show that he was prejudiced.  Indeed, Luckenbill and Sprenkle expressly stated in their statements that Petitioner was not to take things from the warehouse.  Sturman and Sykes statements also did nothing to help Petitioner's case.  Petitioner has come forward with nothing from these four witnesses to indicate that they would have

14

testified differently than the statements admitted at the hearing that were not helpful to Petitioner's case.

As to Arkellian, at the outset it is unclear whether any procedural error in and of itself occurred during Petitioner's hearing because it is not clear that Petitioner requested Arkellian's testimony at that time.  Indeed, the notice of disciplinary hearing only indicates Petitioner sought the testimony of Luckenbill, Sprenkle, Sturman and Sykes.  See ECF No. 3-2 at 26.  Petitioner though did not sign this notice.  The notice indicates he was unable to sign.  See id.  Based on this record, this Court cannot discern whether Petitioner in fact requested Arkellian testify at his hearing at the time.  Given this uncertainty, this Court will give Petitioner the benefit of the doubt and will assume arguendo that he also requested Arkellian testify at his hearing.

The next issue is whether Petitioner was prejudiced by not having Arkellian testify at his hearing.  This is a somewhat closer case than the four witnesses previously discussed.  As noted supra, Arkellian explained in his statement that Sprenkle gave Petitioner food items.  See ECF No. 3-2 at 18.  Sprenkle's statement admitted during the hearing confirms this.  See id. at 8.  Arkellian next asserted that the items in Petitioner's possession were not stolen, yet in the next sentence, admits that the items were not permitted to be taken back to the

15

housing unit. See id. at 18. Given this admission by Arkellian, and the fact that Petitioner possessed the food items outside of the warehouse, this Court fails to see how Petitioner was prejudiced by Arkellian's lack of testimony. No witness indicates that Petitioner was permitted to take food items outside of the warehouse where he was found with them. It is also particularly telling that Petitioner testified at his hearing that he was taking the items back to his housing unit. Accordingly, this Court finds Petitioner fails to show he was prejudiced by Arkellian's lack of testimony at his hearing.

  ii.  *Transfer to Allenwood SHU*

Petitioner also challenges his transfer to the Allenwood SHU. Petitioner fails to show how this transfer entitles him to habeas relief. Most notably, he has not shown that there was either a due process violation during his disciplinary proceedings or prejudice as a result of a potential procedural due process violation.

Nevertheless, this Court would be remiss if it did not express its concern with, what at least in 2016, seems to have been Bureau of Prisons ("BOP") policy with respect to serious disciplinary charges taking place at the camp at U.S.P. Lewisburg. First is the obvious; Wolff provides that inmates are entitled to present witnesses on their behalf during disciplinary proceedings where good time credits were

16

disallowed.  However, the BOP's purported policy of removal of Lewisburg camp inmates to Allenwood and then basing witness unavailability on this removal effectively infringes upon a petitioner's right every time a Petitioner can show prejudice.

Second, Respondent states only those prisoners at the U.S.P. Lewisburg camp who had serious disciplinary charges were removed Allenwood's SHY.  Given the seriousness of the disciplinary charges though, it presumably would have behooved the BOP to make witnesses available to testify at a disciplinary hearing, particularly one where an inmate's good time credits are at stake.  Nevertheless, the BOP's policy effectively made this difficult.

Finally, and perhaps most importantly, given technological advances (video and teleconference), this Court would hope that the unavailability of witnesses espoused by the BOP who are fifteen miles away from an inmate's disciplinary hearing is no longer an issue in 2020.

**IV. CONCLUSION**

For the foregoing reasons, Petitioner's habeas petition will be denied.  An appropriate order will be entered.

DATED: September 25, 2020      s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.